# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMONETTE KING, et al., | **CASE NO. CV09-9088 DSF (RCx)** |
| Plaintiffs, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| AETNA LIFE INSURANCE COMPANY, and DOES 1 through 10, inclusive, | |
| Defendants. | |

Having considered the evidence presented by the parties and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

1. For the time period relevant to this action, Plaintiff Stanley Thomas was an employee of L-3 Communications ("L-3"). See Complaint at ¶ 6.

2. Plaintiffs Simonette and Brandon King (the "Twins") were born on December 22, 1989, to Plaintiff [1]Renette King-Thomas, the wife of Stanley Thomas.

3. By virtue of his employment with L-3, Mr. Thomas was eligible to

---

[1] The Court refers to all named plaintiffs as "Plaintiffs." The Court does not conclude that each named plaintiff is a proper plaintiff in this action.

participate in the L-3 Communications Group Health Plan through the L-3 Communication Corporation Aetna Choice POS II Medical Plan, as modified (the "Plan"). Administrative Record ("AR") at 84, 159. The Summary Plan Description ("SPD"), AR at 81-167, is the document provided to the employees that describes the available benefits. AR at 84. The parties agree the SPD constitutes the Plan for the purposes of this proceeding. Rptr. Tr. 10-12.

4. Pursuant to the Managed Care/Administrative Services Contract ("Contract") between L-3 and defendant Aetna Life Insurance Company ("Aetna"), AR at 1, et seq., Aetna provides certain administrative services, including claims administration services and managed care services in connection with the Plan. AR at 1.

5. The Contract provides that Aetna "shall process requests for benefits and pay such benefits using Aetna's normal claim determination, payment and audit procedures . . . in accordance with the terms of the Plan and th[e] Contract." AR at 25.

6. Under the Contract, L-3 assumes "all liability for the funding of benefits under the Plan and Aetna assumes no such liability." AR at 25. In addition, L-3 "has the sole and complete authority to determine eligibility of persons to participate in the Plan." AR at 64.

7. Participation in the Plan is not automatic. The employee must enroll to have coverage. The employee and his dependents can enroll only at times specified in the Plan. AR at 160-62.

8. Step-children who live with the employee full-time are eligible to be enrolled in the Plan. AR at 161.

9. Coverage normally ends when a dependent child (including a step-child) reaches his/her 19th birthday, but children determined to be handicapped are eligible for coverage until age 25 if certain conditions are met. AR at 161-62.

10. Under the Plan, when an employee enrolls his dependents for coverage, he is required to complete the L-3 Dependent Eligibility Questionnaire and provide certain documents to prove that the dependent is eligible. This requirement applies in all circumstances in which an employee may want to enroll the dependent, including when the employee has a qualifying event that allows him to add a dependent during the plan year. AR at 162-63.

11. The Plan affords L-3 the right to confirm any dependent's eligibility at any time. Failure to respond to a request results in termination of coverage. Id.

12. Aetna administers claims for benefits under the Plan. Aetna initially pays all proper claims, but is reimbursed by L-3 because Aetna is not the insurer of the Plan. AR at 1-80, 147.

13. L-3 delegated to Aetna discretionary authority and responsibility to determine entitlement to Plan benefits. AR at 64, 91. L-3 retained complete authority and responsibility for the Plan, its operation, and eligibility pursuant to the Plan. Id.

14. The Plan contains a mandatory two-level appeal process that must be followed before any legal action can be pursued. AR at 139-42.

15. In 2007 Mr. Thomas took an unpaid leave of absence. He returned to work in 2008. AR at 2598-99; 2601[2]. While he was on leave, Mr. Thomas did not make the required contributions to continue coverage under the Plan for himself or any of his dependents and, thus, his coverage for himself and his dependents was terminated effective December 31, 2007. Id. Mr. Thomas's return to work following his leave was a "qualifying event," making him eligible to re-enroll for health benefits and triggering the Plan requirement of completing the Dependent Eligibility Questionnaire and supplying the other proof of eligibility. AR at 162-63.

---

[2] The Court permitted both parties to supplement the originally provided Administrative Record with appropriate documents.

16. When he returned from his unpaid leave, Mr. Thomas re-enrolled for Family coverage. He included Renette King-Thomas and another dependent, and he enrolled the Twins for dental - but not medical - coverage at that time. AR at 2605.

17. The Plan allows "special enrollment." AR at 162. Mr. Thomas was permitted to re-enroll the Twins for medical coverage in 2009, notwithstanding that the re-enrollment was not within 60 days of the return from leave or during open enrollment. At the time of the Twins' re-enrollment, Mr. Thomas was required by the Plan to complete a Dependent Eligibility Questionnaire and provide certain documents to prove eligibility. AR at 163.

18. L-3's Dependent Eligibility Questionnaire states:

> To: L-3 Communications Employee:
> You are electing to add one or more dependent(s) to the L-3 Health & Welfare plan, either because you are a new hire or **are experiencing a mid-year status change.** In order to meet our fiduciary responsibility under the plan, we must verify eligibility for all dependents to be enrolled under our plans. This means that to enroll your dependents you are required to complete this Dependent Eligibility Questionnaire and submit the appropriate proof documents as listed on the chart on page 2. The completed and signed questionnaire and proof documents should be submitted to your Human Resources office. If a dependent is enrolled and you do not complete the questionnaire or provide the proof documents within 31 days, your dependent(s) will be terminated retroactive to the effective date and COBRA will not be available. You may address any questions related to this process to your local Human Resources/Benefits Office.

AR at 214 (emphasis added). In addition, the next page, entitled "L-3 Document Submission Requirements" provided:

> 8  Stepchild   Birth Certificate AND Marriage Certificate AND Spouse Custody Document AND Same Address Document. (**if child is over age 19 must also provide proof of disability or full-time student status**)

> \*\*\*
>
> **Disabled Child Over 19, Not Enrolled in School**. A certified Handicapped Child/Disabled Student Attending Physician Statement must be signed by you and the child's attending physician. You are required to provide this documentation before the child's 19th birthday (25th if coverage is continued while in school), or when you enroll the child for the first time in the case of a new hire or family status change. Depending on which plan you enroll in, use the carrier Handicapped Child/Disabled Student Attending Physician Statement. Coverage could be terminated retro-active to the effective date if not approved by carrier.

AR at 215 (emphasis added).

19. The Plan permitted L-3 to ask Mr. Thomas for the documents that were requested. Because the Twins are Mr. Thomas' stepchildren, Mr. Thomas was required to supply L-3 with all eligibility information for them. Because the Twins were older than 19 at the time of re-enrollment, Mr. Thomas was also required to supply proof of their disability. AR at 215. (Even if there had never been a break in service – and thus no "re-enrollment," Mr. Thomas would have been required to affirmatively apply for continued coverage for the Twins after age 19. AR at 162.)

20. L-3 asked Mr. Thomas on several occasions to provide the completed Dependent Eligibility Questionnaire and other required documents. AR at 212-234.

21. Aetna's determination, in July 2007, that the Twins medically qualified for benefits as incapacitated dependent children did not qualify the Twins for benefits under the Plan. Under the Plan, Aetna could not pay the claims until L-3 confirmed the Twins' eligibility as participants. AR at 207.

22. Shortly after being notified by Aetna that the Twins were medically qualified for benefits, by letter of August 3, 2009, L-3 reiterated its request to Mr. Thomas to provide the completed Dependent Eligibility Questionnaire and other required documents. AR at 235.

23. When the completed Questionnaire and supporting documentation were not provided, coverage for the Twins was cancelled effective April 30, 2009. AR at 229. Plaintiffs did not complete the required two levels of appeals of the numerous denials of the claims for health care services provided to the Twins. The Administrative Record contains numerous Explanations of Benefits notifying Mr. Thomas that claims for the Twins were denied because the Twins were not enrolled for coverage under the Plan. See, e.g., AR at 2279-2591. Nevertheless, Plaintiffs did not follow the Plan's appeal procedures following any of those denials.

24. Until November 2, 2010, Plaintiffs had not provided, and the Administrative Record did not contain, the proof of eligibility required by the Plan and L-3 did not receive the documentation required to process enrollment for the Twins until after Plaintiffs were ordered by this Court (on October 25, 2010) to provide the documents required by L-3. See Docket No. 24.

25. After receiving the information ordered by the Court, and without any Court determination that it was required to do so, L-3 expeditiously authorized Aetna to provide retroactively all appropriate benefits relating to the Twins. See Docket No. 26.

26. Plaintiffs then insisted that the total benefits due, which they claimed to be more than $1,000,000, should be paid to them in cash. They made this demand despite the fact that there was no evidence any of the Plaintiffs had paid any sums due to the medical providers, and that some of the providers had been reimbursed in part by Medi-Cal. They further claimed that Aetna should not get the benefit of any agreements it has with medical providers. This position delayed the proceedings and caused Aetna to incur unnecessary expense as Aetna was forced to seek a judicial determination concerning the issue. See Docket Nos. 26, 30, 31.

27. Plaintiffs also asserted they were entitled to attorneys' fees. Therefore, this Court was required to hold a bench trial to determine whether Plaintiffs' claims had

merit, and whether Plaintiffs had achieved any success on the merits of this action. See, e.g., Docket No. 32.

28. Plaintiffs further delayed these proceedings by refusing to provide Aetna with authorizations to obtain information from Medi-Cal so that Aetna could provide appropriate reimbursement to that agency. Once again Aetna was forced to obtain a judicial determination, and to incur attorneys' fees, to address this issue. See Docket Nos. 42-47.

**CONCLUSIONS OF LAW**

1. The abuse of discretion standard applies to this denial of benefits challenge under 29 U.S.C. § 1132(a)(1)(b), as the plan unambiguously grants Aetna "full discretionary authority," AR at 291, to determine eligibility for benefits or to construe the terms of the Plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1103 (9th Cir. 2003); McDaniel v. Chevron Corp., 203 F.3d 1099, 1107 (9th Cir. 2000). Because the Plan conferred on Aetna the complete authority to review and deny claims for benefits under it, the Court applies the abuse of discretion standard.

2. Because Aetna, the claims administrator charged with the responsibility of making benefit determinations, does not pay benefits from its own assets, it did not have a conflict of interest. See Burke v. Pitney Bowes Inc. Long-Term Disability Plan, 544 F.3d 1016, 1026 (9th Cir. 2008).

3. Neither L-3 nor Aetna imposed eligibility requirements other than those set forth in the Plan. The Plan is not ambiguous and, therefore, Plaintiffs had no reasonable expectation of coverage until they fulfilled the requirements of the Plan by providing the documents required by L-3 under the terms of the Plan.

4. The Court finds that Aetna acted reasonably and did not act arbitrarily or capriciously in denying the claims of the Twins. The Court finds that Aetna did not abuse its discretion because the Administrative Record contains a firm and factual basis for Aetna's decision to deny the claims at issue in this action. Aetna must make

benefit determinations and pay benefits strictly "in accordance with the documents and instruments governing the Plan." 29 U.S.C. § 1104(a)(1)(D).

5. Further, the Court finds that Plaintiffs' claims are also barred because Plaintiffs failed to exhaust all administrative remedies that were available to them at the time the suit was filed. <u>Dishman v. UNUM Life Ins. Co. of America</u>, 269 F.3d 974 (9th Cir. 2001).

6. L-3 and Aetna were at all times prepared and willing to provide benefits to the Twins on the presentation of the evidence of eligibility under the Plan. Despite numerous requests by L-3 and Aetna, Plaintiffs refused to provide the requested information. The information was ultimately provided only because the Court ordered Plaintiffs to produce it. The Court has never made any determination that the Twins are eligible for coverage, and does not do so now. Plaintiffs did not achieve any degree of success on the merits within the meaning of <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 130 S.Ct. 2149, 2158 (2010). The Court further finds that, even if Plaintiffs could be viewed as having achieved some degree of success on the merits, they would not be entitled to attorney's fees. Neither L-3 nor Aetna acted in bad faith at any time during the litigation. An award of fees against Aetna obviously would not deter Aetna, L-3, or others from acting in this manner as Aetna and L-3 had an obligation to pay only claims for eligible participants. Indeed, they practically implored Plaintiffs to provide simple documentation reasonably required. No significant legal questions were at issue and Plaintiffs did nothing to benefit other participants or beneficiaries of the Plan. Quite the contrary. It is Plaintiffs who have needlessly prolonged the litigation. Therefore, Plaintiffs are not entitled to an award of attorney's fees. <u>See Simonia v. Glendale Nissan/Infiniti Disability Plan</u>, 608 F.3d 1118 (9th Cir. 2010).

7. In light of the above findings of fact and conclusions of law, the Court finds in favor of Aetna. Judgment is entered in favor of Aetna and against Plaintiffs.

8. Plaintiffs shall recover nothing against Aetna. Aetna shall recover its costs of suit pursuant to 28 U.S.C. 1920.

Dated: July 7, 2011

*Dale S. Fischer*

Dale S. Fischer
United States District Judge